Dart *v.* Ensign.

---

PENTHOUS DART, Appellant, *v.* CHARLES ENSIGN, Respondent.

(GENERAL TERM, FIFTH DISTRICT, APRIL, 1870.)

On receipt of goods at New York destined to Chicago, but consigned to an
intermediate consignee at Buffalo, the carrier signed two bills of lading;
one of them he retained, and it required delivery at Buffalo, named the
charge for freight to that place, and directed the consignee to pay
the shipper or his order, specified advances made by him to the carrier;
the other was identical with it, except in containing an additional
memorandum of the charge for freight from New York to Chicago, and
further consigning the goods to a Chicago consignee, and was sent by
the shipper to the Buffalo consignee.   The carrier delivered the goods
to the consignee at Buffalo.—*Held*, that the latter became liable for the
freight money earned on acceptance of the goods, and that the carrier
could recover the same of him.

*Held* further, that the said consignee, having no interest or ownership in the property, was not liable for demurrage, on account of unreasonable delay in unloading at Buffalo.

THIS was an appeal from a judgment on the report of a referee.

The plaintiff was the owner and master of a vessel, and received from a shipper in New York, a cargo of iron, on the receipt of which he signed a bill of lading as follows:

MERCHANT'S LINE.

"Shipped, New York, October 12th, 1868, in good order, by H. N. Holt, on board boat Gilbert Candee, of Buffalo, whereof E. Dart is master, the following articles:

| Care Chas. Ensign, Buffalo, N. Y. For I. F. Fox, care Chicago, Burlington & Quincy R. R., Chicago, Ill. Delivered at their dock. | | |
|---|---|---|
| 775 Bars R. R. Iron.... 308,000. | | |
| Advance cash, N. Y... $25 00 | River tow........ 30 00 | From N. Y. to Chicago, $6.25 per tons net. |
| Tolls, B't......... 6 90 | | |
| Tolls, Cargo...... 212 52 | | |
| Check, Troy...... 138 10 | | |
| $412 52 | | |

"To be delivered at the port of Buffalo, freight at two dollars per gross ton, over tolls and over unloading.

"Received from H. N. Holt, four hundred and twelve 52-100 dollars, advanced on account of freight and toll hereon, which consignee will pay him or order.

$412.52.                    P. DART, *Master.*"

This bill of lading was sent by the shipper to Ensign, the consignee at Buffalo, by mail, and was received by him. The plaintiff at the same time signed another bill of lading, the same in terms with that above set forth, omitting the memorandum: "For I. F. Fox, care Chicago, Burlington and Quincy Railroad, Chicago, Ill., deliver at their dock;" and also, "from New York to Chicago, six dollars and twenty-five cents per ton net;" the latter he retained in his possession.

The plaintiff delivered the cargo at Buffalo in due season as consigned, and it was received by the consignee, the

Dart *v.* Ensign.

defendant. No claim was made at the time of delivery for back freight, and the delivery was without notice of any lien or claim thereon, but a demand of the freight was afterwards made of the defendant, and payment refused.

There was delay at Buffalo in unloading the boat, on account of the defendant's neglect to receive the cargo upon its arrival. The plaintiff sued for the balance of freight charges to Buffalo, and also for damages by way of demurrage on account of the delay. The referee dismissed the complaint, and plaintiff appealed.

*Messenger & Jenkins*, for the appellants.

*A. Perry*, for the respondent, insisted substantially, with other points, that the bill of lading in this case differed from that in ordinary use, under which a consignee is held liable for freight, in that it made no provision for the payment of freight by the consignee, and that without such provision, and no other facts having been proved from which a contract to pay freight could be implied, the consignee could not be charged.

Present—MULLIN, MORGAN and DOOLITTLE, JJ.

By the Court—MULLIN, P. J. There were two bills of lading signed by plaintiff, the one showing consignment to the defendant at Buffalo, that consignor had paid $412.52, which sum consignee was directed to retain for consignor out of freight earned by plaintiff. The freight came to $616.

By the other bill of lading the goods were consigned to Fox of Chicago to the care of defendant at Buffalo. Freight to Chicago, $6.25 per ton, of which two dollars was to Buffalo. The two dollars was over tolls and unloading.

It would seem that the latter bill was intended to accompany the goods to Chicago, the other to accompany them to Buffalo only. The plaintiff knew from the second bill above mentioned, that defendant was not owner of the goods; that

he received the goods only to forward them to Fox at Chicago. The plaintiff, when he delivered the goods to the defendants, had a lien for their carriage. His obligation to carry terminated at Buffalo, and his freight was then earned. When he delivered the goods to defendant he either transferred to him his lien, or he surrendered the property relieved from all lien.

It is obvious that it was the understanding between the consignor and the plaintiff that the latter was to be paid at Buffalo, as from the freight to that point the consignor's advances were to be retained. There was no one but plaintiff to pay. It is not to be presumed that, in view of these provisions, the plaintiff parted with his lien and consented to look to Fox, or the Chicago B. & Q. R. R. Co. for his pay. The defendant was, I think, bound to pay freight when he accepted the goods. He was not liable for demurrage if it was found that the detention was unreasonable. To subject an intermediate consignee to liability for damages in the nature of demurrage, he must own or have an interest in the property. The consignee at the place of final delivery may be liable although not interested in the property.

For these reasons, I think the referee erred in his conclusions of law, and the judgment must be set aside and the order of reference vacated.

Judgment reversed.